# 22-3237

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MICHAEL SPENCER and HIS TABERNACLE FAMILY CHURCH, INC.,

*Plaintiffs-Appellees,*

*v.*

STEVEN A. NIGRELLI, Acting Superintendent of the New York State Police, in his official and individual capacities,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

## BRIEF OF CONGREGATION BETH ARON D'KARLIN AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Eric C. Rassbach
The Hugh and Hazel Darling
Foundation Religious Liberty Clinic
Pepperdine University
Caruso School of Law
24255 Pacific Coast Highway
Malibu, CA 90263

Wade J. Callender
Callender & Co., LLC
2805 Dallas Parkway, Suite 620
Plano, TX 75093

Noel J. Francisco
Robert N. Stander
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

Sarah E. Welch
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH 44114

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29 of the Federal Rules of Appellate Procedure, Congregation Beth Aron D'Karlin discloses that it has no parent corporation and no stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.............................................i

TABLE OF AUTHORITIES....................................................................iii

INTEREST OF THE *AMICUS CURIAE*................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT.................. 2

ARGUMENT ........................................................................................... 4

I.    In light of persistent threats of violence against the
      Jewish community, Jewish worshipers' self-defense
      rights should not be curtailed ............................................. 4

II.   The place-of-worship ban violates the Free Exercise Clause ........... 9

      A.   The place-of-worship ban is not neutral and generally
           applicable because it treats religious gatherings worse
           than comparable secular activities ........................................ 10

      B.   The place-of-worship ban is not neutral because it
           explicitly discriminates based on religion ............................... 12

      C.   The place-of-worship ban fails strict scrutiny.......................... 14

CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ............................................................... 16

*Carson v. Makin*,
142 S. Ct. 1987 (2022) ............................................... 9, 13, 14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ..................................................... 14, 15

*Emp. Div., Dep't of Hum. Res. v. Smith*,
494 U.S. 872 (1990) ............................................................. 10

*Espinoza v. Mont. Dep't of Revenue*,
140 S. Ct. 2246 (2020) ................................................. 13, 14

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021) ........................................................ 15

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ................................... 9, 10, 11, 15

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) ............................................. 12, 13, 14

*Zablocki v. Redhail*,
434 U.S. 374 (1978) ............................................................. 12

STATUTES

N.Y. Penal Law § 265.01-e ............................................ 3, 9, 14

OTHER AUTHORITIES

Haley Cohen, *Hate in New York: Antisemitism Attacks
Increased 41% in 2022*, The Jerusalem Post
(Jan. 11, 2023) ...................................................................... 5

Facing History & Ourselves, *Antisemitism and Its Impacts* ................... 4

FBI, *Crime Data Explorer* ...................................................... 4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Michael Gold & Ali Watkins, *Suspect in Jersey City
    Linked to Black Hebrew Israelite Group*, N.Y. Times
    (Dec. 12, 2019) ...................................................................... 5

Jacob Henry, *Some Jews 'do not comply' with New
    York gun laws to protect their synagogues*,
    Jewish Telegraphic Agency (Oct. 19, 2022) ......................... 8

Jewish Telegraphic Agency & Times of Israel Staff, *Man
    who posted he would kill Jews gets 1 year in prison*,
    Times of Israel (June 5, 2019) .............................................. 7

Ariella Marsden, *Texas synagogue hostages freed, British
    gunman dead,* Jerusalem Post (Jan. 16, 2022) .................... 6

Press Release, Secure Community Network, *Jewish
    Community Remains Most-Targeted Religious Group
    According to New FBI Data, Despite Significant
    Underreporting of Hate Crimes* (Dec. 12, 2022) .................. 4

Press Release, U.S. Attorney's Office, District of Maryland,
    *Federal Indictment Charges Man for Making Threatening
    Calls Against a Maryland Synagogue* (Aug. 15, 2019) ........ 7

Press Release, U.S. Attorney's Office, District of New Jersey,
    *Passaic County Man Arrested for Attempt to Firebomb
    Synagogue* (Feb. 1, 2023) ................................................... 7

Press Release, U.S. Attorney's Office, Southern District of
    California, *John T. Earnest Sentenced to Life Plus 30
    years in Prison for Federal Hate Crimes Related to 2019
    Poway Synagogue Shooting and Attempted Mosque Arson*
    (Dec. 28, 2021) ..................................................................... 6

Press Release, U.S. Attorney's Office, Western District of
    Washington, *Kent, Washington man who made multiple
    online threats sentenced to 5 years in prison* (Oct. 18, 2019) .............. 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Campbell Robertson, Christopher Mele, and Sabrina
    Tavernise, *11 Killed in Synagogue Massacre; Suspect
    Charged With 29 Counts*, N.Y. Times (Oct. 27, 2018) ...................... 2, 5

Liam Stack, *Antisemitic Attacks in New York Are at
    Highest Level in Decades,* N.Y. Times (Apr. 26, 2022) ........................ 4

Times of Israel Staff & Associated Press, *Man stabbed in
    Monsey Hanukkah attack succumbs to wounds*,
    Times of Israel (Mar. 30, 2020) ............................................................ 5

U.S. Dep't of Homeland Sec., *Houses of Worship Security
    Practices Guide* (May 2013) ........................................................... 8, 15

## INTEREST OF THE *AMICUS CURIAE*[1]

Congregation Beth Aron D'Karlin is an Orthodox Jewish synagogue located in Monsey, New York. Congregation Beth Aron D'Karlin stands in the tradition of Rabbi Aharon ben Jacob Perlov of Karlin, an influential Rabbi in Hasidic Judaism. The synagogue provides a place of reprieve for the Orthodox community in Monsey, offering a space for worship and religious observance.

Mindful of the persistent risk of violence against Jews in Monsey, in New York, and across the nation, *Amicus* files this brief supporting appellees' argument that the Concealed Carry Improvement Act violates the Free Exercise Clause by banning otherwise-lawful concealed carry in places of worship.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund the brief, and no person other than the amicus curiae, its members, or its counsel contributed money intended to fund the brief. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Worshipers at the Tree of Life Congregation in Pittsburgh, Pennsylvania, gathered in their synagogue on October 27, 2018, for a Shabbat service. But what should have been a time of prayer, reflection, and rejoicing turned into a deadly rampage when a gunman screamed antisemitic slurs as he attacked the congregation with a rifle and handguns. The gunman murdered eleven worshipers and injured seven more.[2]

The Tree of Life shooting is just one in a long list of attacks on American synagogues. Antisemites often direct threats and violence against synagogues, and Jewish communities worship under a demonstrated risk of violence. Yet the challenged provision of the Concealed Carry Improvement Act—the place-of-worship ban—significantly undermines *Amicus*'s security by preventing its law-abiding congregants from protecting themselves and their synagogue by carrying firearms for self-defense. At the same time, the ban does little or nothing

---

[2] Campbell Robertson, Christopher Mele, and Sabrina Tavernise, *11 Killed in Synagogue Massacre; Suspect Charged With 29 Counts*, N.Y. Times (Oct. 27, 2018), https://www.nytimes.com/2018/10/27/us/active-shooter-pittsburgh-synagogue-shooting.html.

to prevent violent criminals from attacking synagogues. Instead, the place-of-worship ban effectively renders Jewish communities defenseless in the face of armed, antisemitic attacks.

The Concealed Carry Improvement Act prohibits the otherwise-lawful carry of firearms in "sensitive location[s]," including "any place of worship or religious observation." N.Y. Penal Law § 265.01-e(2)(c). Appellees' Free Exercise challenge to this provision is likely to succeed on the merits. Strict scrutiny applies because the ban is not neutral and generally applicable: it does not restrict comparable secular locations, and it denies otherwise-available benefits to places of worship based on their religious identity. Because it is substantially underinclusive and because less restrictive alternatives are available, the ban fails strict scrutiny.

# ARGUMENT

## I.  In light of persistent threats of violence against the Jewish community, Jewish worshipers' self-defense rights should not be curtailed.

The Jewish community is the most targeted religious group in America.[3] Jews constitute only two percent of America's population,[4] but crimes targeting the Jewish community typically make up more than half of all reported hate crimes, totaling hundreds of incidents per year.[5] In 2020, the FBI documented 959 anti-Jewish hate crime incidents, mostly involving intimidation or property damage and vandalism.[6] Nearly a fifth of those incidents occurred in New York.[7] Violence against Jews is endemic in America, and New York is no exception.[8] New York's effort to

---

[3] *See* Press Release, Secure Community Network, *Jewish Community Remains Most-Targeted Religious Group According to New FBI Data, Despite Significant Underreporting of Hate Crimes* (Dec. 12, 2022), https://cdn.fedweb.org/fed-91/2/FBI%25202021%2520UCR%2520Release%2520-%2520FINAL%2520-%2520121222.pdf.

[4] *See* Facing History & Ourselves, *Antisemitism and Its Impacts*, https://www.facinghistory.org/resource-library/antisemitism-its-impacts (last updated Apr. 8, 2022).

[5] *See* FBI, *Crime Data Explorer*, https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/hate-crime (last visited Mar. 7, 2023).

[6] *Id.*

[7] *Id.*

[8] Liam Stack, *Antisemitic Attacks in New York Are at Highest Level in Decades,* N.Y. Times (Apr. 26, 2022), https://www.nytimes.com/2022/04/

disarm synagogues runs counter to this known data.

The stories of these incidents are even more disturbing than the statistics. Three brief examples illustrate the point.

- In December 2022 in New York City, attackers shot a Jewish man and his son outside a supermarket. Other attackers chased Jewish boys, firing a taser gun and yelling, "Run Jews! Get out of here!"[9]

- In December 2019 in California, three Jewish individuals were shot and killed at a kosher market.[10]

- In December 2019 in Monsey, New York—where *Amicus* is located—one person was killed and four were injured when a man attacked a Chanukah gathering in a rabbi's home.[11]

Synagogues are also a frequent target of attacks. As described above, in October 2018, a gunman murdered 11 people and injured 7 more during services at the Tree of Life Congregation in Pittsburgh, Pennsylvania.[12]

---

26/nyregion/antisemitic-attacks-new-york.html.

[9] *See* Haley Cohen, *Hate in New York: Antisemitism Attacks Increased 41% in 2022*, The Jerusalem Post (Jan. 11, 2023), https://www.jpost.com/diaspora/article-728192.

[10] Michael Gold & Ali Watkins, *Suspect in Jersey City Linked to Black Hebrew Israelite Group*, N.Y. Times (Dec. 12, 2019), https://www.nytimes.com/2019/12/11/nyregion/jersey-city-shooting.html.

[11] Times of Israel Staff & Associated Press, *Man stabbed in Monsey Hanukkah attack succumbs to wounds*, Times of Israel (Mar. 30, 2020), https://www.timesofisrael.com/man-stabbed-in-monsey-hanukkah-attack-succumbs-to-wounds.

[12] Robertson et al., *11 Killed in Synagogue Massacre*, *supra*.

Last year, a gunman held hostage three congregants and a rabbi during an eleven-hour standoff with law enforcement after he entered a Texas synagogue during Shabbat services. The gunman was thwarted only when law enforcement stormed the building.[13]

In April 2019, a man opened fire in a California synagogue, killing one member of the congregation and wounding three others. Congregants rushed the gunman while he was reloading and succeeded in chasing him out of the synagogue. After the shooting, investigators found the gunman's antisemitic manifesto. He claimed that he was inspired by the Tree of Life synagogue shooting.[14]

Finally, just last month, a man was arrested for attempting to firebomb a New Jersey synagogue. Surveillance footage revealed that the

---

[13] Ariella Marsden, *Texas synagogue hostages freed, British gunman dead,* Jerusalem Post (Jan. 16, 2022), https://www.jpost.com/breaking-news/article-692626.

[14] Press Release, U.S. Attorney's Office, Southern District of California, *John T. Earnest Sentenced to Life Plus 30 years in Prison for Federal Hate Crimes Related to 2019 Poway Synagogue Shooting and Attempted Mosque Arson* (Dec. 28, 2021), https://www.justice.gov/usao-sdca/pr/john-t-earnest-sentenced-life-plus-30-years-prison-federal-hate-crimes-related-2019.

man walked up to the front entrance, paused, and then ignited a Molotov cocktail and hurled it at the synagogue's glass front doors.[15]

Threats against Jewish congregations likewise abound. For example, in August 2019, a man was charged with making criminal threats for threatening to murder the members of a Maryland synagogue.[16] In June 2019, a Washington man was convicted for threatening to attack synagogues and carry out mass killings of Jews.[17] And in May 2019, another Washington man was convicted for threatening to bomb synagogues.[18]

---

[15] Press Release, U.S. Attorney's Office, District of New Jersey, *Passaic County Man Arrested for Attempt to Firebomb Synagogue* (Feb. 1, 2023), https://www.justice.gov/usao-nj/pr/passaic-county-man-arrested-attempt-firebomb-synagogue.

[16] Press Release, U.S. Attorney's Office, District of Maryland, *Federal Indictment Charges Man for Making Threatening Calls Against a Maryland Synagogue* (Aug. 15, 2019), https://www.justice.gov/usao-md/pr/federal-indictment-charges-man-making-threatening-calls-against-maryland-synagogue.

[17] Jewish Telegraphic Agency & Times of Israel Staff, *Man who posted he would kill Jews gets 1 year in prison*, Times of Israel (June 5, 2019), https://www.timesofisrael.com/man-who-posted-he-would-kill-jews-gets-1-year-in-prison.

[18] Press Release, U.S. Attorney's Office, Western District of Washington, *Kent, Washington man who made multiple online threats sentenced to 5 years in prison* (Oct. 18, 2019), https://www.justice.gov/usao-wdwa/pr/kent-washington-man-who-made-multiple-online-threats-sentenced-5-years-prison.

Despite this persistently dangerous environment, New York's place-of-worship ban paradoxically makes synagogues *softer* targets by disarming law-abiding worshipers. A hate-filled potential attacker now knows he will face no armed resistance from helpless congregants. As the Department of Homeland Security warns, "the perception that religious facilities are 'soft targets' and have little security may make them a more attractive target for individuals looking to carry out an attack on a large group of individuals." U.S. Dep't of Homeland Sec., *Houses of Worship Security Practices Guide* 7 (May 2013).

In the face of persistent hate, violence, and threats, synagogues and worshipers need more opportunity to defend themselves, not less. As one man who provides security at his New York synagogue put it, "History has shown us that when Jews are not being allowed to defend themselves, this can lead to bad outcomes."[19] By disarming worshipers, New York renders houses of worship less safe and less able to defend themselves against the armed criminals who target them.

---

[19] Jacob Henry, *Some Jews 'do not comply' with New York gun laws to protect their synagogues*, Jewish Telegraphic Agency (Oct. 19, 2022), https://www.jta.org/2022/10/19/ny/some-jews-do-not-comply-with-new-york-gun-laws-to-protect-their-synagouges.

## II. The place-of-worship ban violates the Free Exercise Clause.

New York's ban on carrying firearms in synagogues is not just dangerous. It also violates the Free Exercise Clause. New York ordinarily allows licensed gun possession. The so-called Concealed Carry Improvement Act bans firearms, subject to limited exceptions not relevant here, in any "sensitive location," including "any place of worship or religious observation." N.Y. Penal Law § 265.01-e(2)(c).

The place-of-worship ban is not neutral and generally applicable. It treats religious activities worse than comparable secular activities, and it directly targets religious groups. The ban therefore must survive the strictest scrutiny. *Carson v. Makin*, 142 S. Ct. 1987, 1997 (2022); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

New York's place-of-worship ban fails strict scrutiny because it is not narrowly tailored to New York's goal of reducing gun violence. The ban is substantially underinclusive, as it does not apply to comparable secular locations. And it is not the least restrictive means of pursuing New York's goals, as even New York volunteers a less-restrictive alternative. *See* Appellant Br. 21 n.4.

9

**A. The place-of-worship ban is not neutral and generally applicable because it treats religious gatherings worse than comparable secular activities.**

A law that burdens religious practices must be neutral and generally applicable to avoid strict scrutiny under the Free Exercise Clause. *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 878–79 (1990). State regulations "are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296. In *Tandon*, for example, California restricted religious gatherings in private homes, while treating secular activities with similar risks of COVID-19 transmission—"hair salons, retail stores, personal care services," and the like—with greater favor than at-home religious exercise. *Id.* at 1297. That law's less-favorable treatment of religious activities triggered strict scrutiny. *Id.*

The place-of-worship ban burdens religious practices regarding self-defense and the defense of others. Pastor Spencer and members of his congregation understand their faith to require them to protect the congregation. *See* Appellee Br. 11–12. Jewish tradition similarly acknowledges a moral obligation to protect the innocent from attack. *See, e.g.*, Babylonian Talmud, Sanhedrin 73a.

The place-of-worship ban is not neutral and generally applicable. Just like the law in *Tandon*, the place-of-worship ban treats some comparable secular activities more favorably than religious ones. New York insists it is entitled to ban firearm possession in places of worship because they are sensitive places, and that sensitive places are locations where (1) the exercise of other constitutional rights could be chilled by the presence of firearms; (2) vulnerable people who cannot be expected to defend themselves with firearms, such as children, are likely to be present; and (3) use of firearms, even for self-defense, is substantially more likely to increase the risk of casualties. *See* Appellant Br. 25, 55. According to New York, places of worship fit into all three categories. *Id.*

The problem with New York's law, however, is that many secular locations meet New York's criteria for sensitive places—in other words, they are comparable to places of worship, on New York's own metric— but are not subject to gun bans. Newsrooms, for example, are key to the constitutionally protected freedom of the press, and they may be crowded and would presumably become chaotic in the event of a shooting. But newsrooms do not appear on New York's list of sensitive places. Wedding venues similarly support the constitutionally protected right to marry,

11

*see, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978), are frequently crowded, often have children present, and would presumably descend into chaos in the presence of a gunman. But wedding venues do not appear on New York's list of sensitive places. Restaurants, office buildings, liquor stores, and shopping malls likewise fit into one or more of New York's sensitive-place categories, but New York treats them more favorably than places of worship. Because the Act treats those comparable secular locations more favorably than places of worship, it is not neutral and generally applicable, and strict scrutiny applies.

## B. The place-of-worship ban is not neutral because it explicitly discriminates based on religion.

Strict scrutiny also applies for a second reason. The Free Exercise Clause "subjects to the strictest scrutiny laws that target the religious for special disabilities" based on their religion. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quotation marks omitted). In three recent cases, the Supreme Court held that laws are not neutral, and therefore trigger strict scrutiny, when they expressly discriminate against religious groups by denying them otherwise available benefits based on religious status and use.

12

*First*, in *Trinity Lutheran*, Missouri denied a church's application to participate in Missouri's playground resurfacing program because the application originated from a church. *Id.* at 2024. The Court held that a policy that discriminates based on religious character "imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Id.* at 2021. *Second*, following *Trinity Lutheran*, the Court held in *Espinoza v. Montana Department of Revenue* that Montana's Blaine Amendment, prohibiting use of state funds for religious schools, received "the strictest scrutiny" because it discriminated against religious schools based on their religious character. 140 S. Ct. 2246, 2260 (2020) (quotation marks omitted). *Third*, in *Carson v. Makin*, the Court held that discriminatory provisions are not justified by distinguishing religious use from religious status. Instead, because such provisions penalize the free exercise of religion, they receive the most exacting scrutiny. 142 S. Ct. at 2001.

Like the unconstitutional provisions struck down in *Trinity Lutheran*, *Espinoza*, and *Carson*, the place-of-worship ban penalizes the free exercise of religion by generally allowing licensed firearm possession, but banning otherwise lawful firearm possession in "any place of worship

or religious observation." N.Y. Penal Law § 265.01-e(2)(c). By labeling places of worship "sensitive location[s]," the state expressly singles out religious groups for different—and considerably worse—treatment due to their religious nature. Like the programs in *Trinity Lutheran*, *Espinoza*, and *Carson*, New York's place-of-worship ban penalizes religious observance. It forces worshipers to choose which right to exercise: the free exercise of religion, or the right to bear firearms in self-defense. That means that, like the laws in *Trinity Lutheran*, *Espinoza*, and *Carson*, the place-of-worship ban must face strict scrutiny.

## C. The place-of-worship ban fails strict scrutiny.

A law can survive strict scrutiny only if it is narrowly tailored and the least restrictive means to achieve a compelling government interest. When a law fails the neutral-and-generally-applicable test by failing to treat like conduct alike, it is necessarily "overbroad or underinclusive in substantial respects," meaning that it is not narrowly tailored. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). "A law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Id.*;

*see also Tandon*, 141 S. Ct. at 1298; *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021).

The Act cannot remotely survive strict scrutiny. Even assuming that reducing gun violence writ large is a compelling interest, the place-of-worship ban is not narrowly tailored. Indeed, New York's disparate treatment of comparable religious and secular locations confirms that its restrictions on religious locations are not necessary to achieve that goal. If New York can afford to allow licensed concealed carry at secular wedding ceremonies, it can afford to allow licensed concealed carry at comparable religious gatherings. So too for newsrooms, restaurants, office buildings, liquor stores, and shopping malls. A substantially underinclusive law is not narrowly tailored. *Lukumi*, 508 U.S. at 546. There is nothing necessary about New York's discriminatory disarmament of congregants in their houses of worship.

Worse, the effect of the gun ban is to leave Jewish worshipers defenseless against the very real threat of violence at synagogues. If the Act is not enjoined, law-abiding worshipers will become unarmed, while armed violent criminals will simply see a "soft target." *Houses of Worship Security Practices Guide*, *supra*, at 7. This is not even a rational way,

much less a narrowly tailored one, of reducing gun violence in synagogues.

The place-of-worship ban is likewise not narrowly tailored because there are many ways to address gun violence without banning licensed concealed carry in places of worship. The State could fund additional training for licensed gun owners to maximize deterrence and minimize firearm-related injuries. Instead of disarming law-abiding congregants, New York could crack down on its criminal firearm markets, raise penalties for violent gun crimes, and prioritize enforcement of its felon-in-possession laws. New York even itself puts forward a narrower rule: allowing places of worship to designate non-registered security personnel who may remain armed. Appellant Br. 21 n.4. The place-of-worship ban, then, is self-evidently not the least restrictive means available to New York. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730–31 (2014). In short, the place-of-worship ban cannot survive strict scrutiny.

\*     \*     \*

History and headlines alike show the need of the Jewish community to protect itself. Banning firearms in synagogues wrongly forces a choice between safety and worship. Because New York imposed an unlawful and discriminatory ban against religious congregants within their houses of

16

worship, Appellees are likely to succeed in their Free Exercise challenge to New York's place-of-worship ban.

## CONCLUSION

This Court should affirm.

Date: March 7, 2023

Respectfully submitted,

*/s/ Noel J. Francisco*

Noel J. Francisco
Robert N. Stander
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

Sarah E. Welch
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH 44114

Eric C. Rassbach
The Hugh and Hazel Darling
Foundation Religious Liberty Clinic
Pepperdine Caruso School of Law
24255 Pacific Coast Highway
Malibu, CA 90263

Wade J. Callender
Callender & Co., LLC
2805 Dallas Parkway, Suite 620
Plano, TX 75093

Counsel for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2,955 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Noel J. Francisco*

Counsel for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on March 7, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/ Noel J. Francisco*

Counsel for *Amicus Curiae*